UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| EVELYN CONERLY HUTCHINS, ET AL. | CIVIL ACTION |
| VERSUS | NO: 19-11326 c/w 21-369 |
| ANCO INSULATIONS, INC., ET AL. | SECTION: "J"(5) *Applies to* 21-369 |

## ORDER & REASONS

Before the Court is a *Motion for Summary Judgment Seeking Pro Tanto Credit for Settlements* **(Rec. Doc. 216)** filed by Defendant, Continental Insurance Company, as successor-in-interest to The Marine Office of America Corporation ("Continental"); an opposition (Rec. Doc. 224) filed by Plaintiffs, Evelyn Conerly Hutchins, Dolan Hutchins, and Derek Hutchins; and a reply (Rec. Doc. 229) filed by Continental. Having considered the motions and legal memoranda, the record, and the applicable law, the Court finds that the motion should be denied.

## FACTS AND PROCEDURAL BACKGROUND

Plaintiffs allege that the decedent, Raymond Hutchins, Jr. ("Mr. Hutchins"), was exposed to asbestos while aboard vessels owned and operated by his employer, Lykes Bros. Steamship Company ("Lykes Bros."), between 1964 and 2006. Plaintiffs claim that Continental was the insurer of Lykes Bros.

Plaintiff first filed suit against a number of defendants alleging product liability and negligence claims. These defendants consist of product manufacturers, insurance companies, premises defendants, and distributor defendants. Plaintiffs

1

next filed suit against Continental, among other alleged insurers, alleging Jones Act and general maritime claims as the insurers of his ship owner/ employer defendant, Lykes Bros. This second suit was subsequently consolidated with the first. Continental has now filed the instant motion for summary judgment seeking a *pro tanto* credit for any and all amounts received by Plaintiffs from any bankruptcy trusts and settling defendants.

## **LEGAL STANDARD**

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing FED. R. CIV. P. 56); *see Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). When assessing whether a dispute as to any material fact exists, a court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence." *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.,* 530 F.3d 395, 398 (5th Cir. 2008). All reasonable inferences are drawn in favor of the nonmoving party, but a party cannot defeat summary judgment with conclusory allegations or unsubstantiated assertions. *Little*, 37 F.3d at 1075. A court ultimately must be satisfied that "a reasonable jury could not return a verdict for the nonmoving party." *Delta*, 530 F.3d at 399.

If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must come forward with evidence which would

'entitle it to a directed verdict if the evidence went uncontroverted at trial.'" *Int'l Shortstop, Inc. v. Rally's, Inc.,* 939 F.2d 1257, 1264-65 (5th Cir. 1991). The nonmoving party can then defeat the motion by either countering with sufficient evidence of its own, or "showing that the moving party's evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party." *Id.* at 1265.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim. *See Celotex*, 477 U.S. at 325. The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists. *See id.* at 324. The nonmovant may not rest upon the pleadings but must identify specific facts that establish a genuine issue for trial. *See id.* at 325; *Little*, 37 F.3d at 1075.

## DISCUSSION

Continental argues that it is entitled to a *pro tanto* credit for any amounts that Plaintiffs have received or will receive from asbestos bankruptcy trusts and from settlements with other companies and individuals. (Rec. Doc. 216-1, at 1). In reply, Plaintiffs contend that Continental's motion is premature because a *pro tanto* credit is only appropriate after a verdict is rendered against Continental. (Rec. Doc. 224, at 1–2). However, if the Court finds it is not premature, Plaintiffs assert that a *pro tanto* credit is only appropriate in some circumstances based upon (1) the applicable law,

(2) theories of liability, and (3) specific type of defendant. (*Id.* at 3). Because Plaintiffs here have proffered causes of action based on state law, federal law, and admiralty law against numerous types of defendants such as shipowner/ employer defendants, product manufacturers, insurance companies, premises defendants, and distributor defendants, Plaintiffs aver that Continental has the burden to show it is entitled to a *pro tanto* credit against each distinct defendant, and it has failed to do so. (*Id.*).

In *United States v. Reliable Transfer Co., Inc.*, the Supreme Court abandoned the "divided damages" rule, whereby when two or more parties caused property damage in a maritime collision or stranding, liability for such damages was allocated equally among the parties at fault, in favor of the proportionate fault rule whereby liability for damages is allocated among the parties proportionately to their comparative degree of fault. *See generally* 421 U.S. 397 (1975). Importantly, the court concluded its opinion with the sentiment "that liability for such damages is to be allocated equally only when the parties are equally at fault or when it is not possible fairly to measure the comparative degree of their fault." *Id.* at 411. Almost twenty years later in *McDermott, Inc. v. AmClyde,* the Supreme Court held that the liability of nonsettling defendants in an admiralty case should be calculated with reference to a jury's allocation of proportionate responsibility, rather than by giving nonsettling defendants credit for a dollar amount settlement. 511 U.S. 202 (1994). Specifically, the court held that the "proportionate share approach, whereby the settlement diminishes the injured party's claim against nonsettling tortfeasors by the amount of the equitable share of the obligation of the settling tortfeasor" is superior to the *pro*

4

*tanto* approach with (or without) contribution. *Id.* at 203. Notably, the Supreme Court once again emphasized that the divided damages rule was replaced with the proportionate fault rule "when such an allocation can reasonably be made." *Id.* at 207. The divided damages rule was abandoned as "unnecessarily crude and inequitable" because "potential problems of proof in some cases hardly require adherence to an archaic and unfair rule in all cases." *Reliable Transfer Co. Inc.*, 421 U.S. at 407. However, "[w]hen it is impossible fairly to allocate degrees of fault, the division of damages equally between wrongdoing parties is an equitable solution." *Id.*

After the Supreme Court issued its ruling in *McDermott v. AmClyde*, lower courts consistently applied the proportionate share method, rather than the *pro tanto* method, in other areas of federal law that called for joint and several liability, such as the Jones Act and Federal Employers Liability Act ("FELA"). RESTATEMENT (THIRD) OF TORTS: APPORTIONMENT OF LIABILITY § 16 cmt. c (2000); *see also* Martin Davies, McDermott v. AmClyde: *The Quiet Achiever*, 39 J. MAR. L. & COM. 11, 12 (2008) (noting the influence of *AmClyde* in other areas of state and federal law, and commenting that "[p]erhaps only *Robins Dry Dock & Repair Co. v. Flint* has had more influence outside of maritime law").

In ordinary cases, "the trier of fact apportions liability among all of the defendants – both settling and non-settling defendants – and then reduces the non-settling defendants' liability to a level commensurate with their proportionate degree of fault." *Cooper v. Faith Shipping*, No. 06-892, 2009 WL 1789405, at *7 (E.D. La. June 22, 2009). It is only when it is impossible to apply this ordinary proportionate

5

share approach that courts have used a *pro tanto* credit approach. *See id.* (applying the *pro tanto* approach when there will be no trial as to liability because all of the defendants have either settled or failed to appear); *Chisholm v. UHP Projects, Inc.*, 205 F.3d 731 (4th Cir. 2000) (applying the *pro tanto* approach when defendants were jointly liable for breach of no-fault duties); *Evanow v. M/V Neptune*, 163 F.3d 1108 (9th Cir. 1998) (applying the *pro tanto* approach in action for breach of contract); *Lukaszuk v. Sudeen*, No. 02-5143, 2007 WL 4699018, at *8 (E.D.N.Y. Nov. 27, 2007) ("Application of the [*pro tanto* approach] is particularly appropriate here since Freeman has willfully defaulted and impeded determination of liability and comparative culpability."); *Stephenson v. Deutsche Bank AG*, No. 02-4845, 2007 WL 763087, at *14 (D. Minn. Mar. 9, 2007) (declining to follow the proportionate share approach in the context of a default judgment); *Hudson Venture Partners, L.P. v. Patriot Aviation Group, Inc.*, No. 98-4132, 2001 WL 871878, at *3 n.7 (S.D.N.Y. Mar. 15, 2001) (finding that set-offs in the context of a default judgment "should be pro tanto rather than proportionate to fault"); *Qualis Care, L.P. v. Hall*, No. 95-4955, 1999 WL 683564, at *8 & n.6 (S.D.N.Y. Sep. 1, 1999) (applying the *pro tanto* approach because the "grant of the plaintiff's unopposed summary judgment motion has eliminated the need for a trial, and thus no determination of the defendants' relative culpability will be made"); *In re: Crazy Eddie Securities Litigation*, 948 F. Supp. 1154, 1169 (E.D.N.Y. 1996) (applying the *pro tanto* approach because "it does not make sense to apply [the proportionate share approach] in cases where the non-settling defendant willfully defaulted by disregarding discovery obligations and impeded

6

determination of liability"); *cf. Westinghouse Credit Corp. v. M/V New Orleans*, 39 F.3d 553, 555 (5th Cir.1994) (holding that the non-settling defendants "are not entitled to call for the proportionate share rule in this case unless (1) they are joint tortfeasors with the settling defendants, and (2) the court determined damages based on the conduct of both [the non-settling tortfeasor] and the settling defendants").

However, recently, a line of cases has emerged that has carved out an exception for FELA and Jones Act cases by relying on the Supreme Court's reasoning in *Norfolk & W. Ry. Co. v. Ayers*, 538 U.S. 135 (2003) ("*Ayers*"). *See Schadel v. Iowa Interstate R.R., Ltd.*, 381 F.3d 671 (7th Cir. 2004) (FELA); *Benson v. CSX Transp., Inc.*, 274 Fed. App'x 273 (4th Cir. 2008) (FELA); *Lewin v. Am. Exp. Lines, Inc.*, 224 F.R.D. 389 (N.D. Ohio 2004) (a Jones Act case reasoning that the maritime nature of the claim required application of *AmClyde*, but nevertheless applying a pro tanto approach on the theory that the calculation of a proportionate share set-off was "unreasonable" under the facts of the case); *Torrejon v. Mobil Oil Co.*, 876 So.2d 877 (La. Ct. App. 4th 2004) (Jones Act); *Hess v. Norfolk Southern Ry. Co.*, 835 N.E. 2d 679 (Ohio 2005) (FELA). Here, Continental urges the Court to follow this exception with reliance upon *Schadel v. Iowa Interstate R.R., Ltd.*, in which the Seventh Circuit held in a FELA[1] case that the employer is entitled to a *pro tanto* credit for settlements received by the plaintiff. (Rec. Doc. 216-1, at 2).

However, this reliance is misplaced because the *Schadel* court based its holding on an inherently flawed reading of both *Ayers* and *AmClyde*. Michael Mims,

---

[1] The Jones Act was modeled closely upon FELA's statutory language, and the two are nearly identical in substance and form.

7

*Giving Credit Where Credit Is Due: Applying the Proper Set-Off Rules in FELA and Jones Act Cases After AmClyde, Ayers, and Schadel*, 72 La. L. Rev. 729, 747 (2012). In *Ayers,* the Supreme Court held that apportionment of liability was not allowed under the FELA. The *Schadel* court used *Ayer's* holding to reason that a proportionate share set-off would also be inconsistent with the FELA. *See Schadel*, 381 F.3d at 676–78. *Schadel* contended that "*Ayers*, as we have already noted, addressed a question very close to the one before us, insofar as it dealt with the way that liability could be apportioned under [FELA]." *Id.* at 676. "This rationale by the Seventh Circuit ignored the fact that the *Ayers* holding referred to apportionment in the context of nonsettling defendants" and led to *Schadel's* biggest flaw. Mims, 72 La. L. Rev. at 745. The *Schadel* court's rationale conflated two distinct versions of apportionment: "apportionment among nonsettling tortfeasors, as rejected by *Ayers*, and the calculation of a proportionate set-off, as embraced by *AmClyde*." *Id.* at 747. The scenario in *Schadel* involved the calculation of a proportionate set-off because the defendant requested that it receive a credit for the settlement of the other defendant and that this credit be calculated in proportion to the settling defendant's share of the fault. *Schadel*, 381 F.3d at 674. The purpose of a settlement credit is different than the purpose of apportioning fault between non-settling tortfeasors who have joint and several liability.

"[A] better view is to look at *Ayers* and *AmClyde* as complementing each other; both cases adhere to the doctrine of joint and several liability as it applies to two entirely different circumstances." Mims, 72 La. L. Rev. at 749. "In the absence of a

8

settlement, a defendant is not entitled to an initial allocation of fault to reduce his liability for other non-settling entities . . . On the other hand, if there has been a settlement, the non-settling defendant is entitled to a proportionate share reduction for the settling tortfeasor's responsibility." *Id.* at 749–50. "[T]here is no tension between joint and several liability and a proportionate share approach to settlements." *AmClyde*, 511 U.S. at 220. When there has been no settlement, the non-settling defendant can seek contribution from the negligent third party by impleading him to the underlying Jones Act or FELA action. However, when there has been a settlement, contribution is not available to the non-settling Jones Act or FELA defendant because the settling defendant is generally immune from contribution. *See* Jean Macchioroli Eggen, *Understanding State Contribution Laws and Their Effect on the Settlement of Mass Tort Actions*, 73 Tex. L. Rev. 1701, 1707 (1995) (surveying state approaches to contribution and concluding that the vast majority do not allow contribution actions against defendants who have already settled).

With reliance upon *Schadel's* flawed reasoning, Continental urges the Court to follow a lone Jones Act case out of the Southern District of Ohio. (Rec. Doc. 216-1, at 3). The court held that, considering the spirit of *Reliable Transfer* and *AmClyde*, "in multi-defendant maritime asbestos cases, such as the case at bar, application of the 'proportionate share' approach set forth in [*AmClyde*] is unreasonable" due to the unique problems that resolution of asbestos maritime litigation has caused for federal courts. *Lewin v. Am. Exp. Lines, Inc.*, 224 F.R.D. 389, 394 (N.D. Ohio 2004). Moreover,

the court found that in a multi-defendant[2] maritime asbestos case, "the applicable approach is joint and several liability with pro tanto set off." *Id.* at 395.

> Thus, Plaintiffs can recover the total amount of any judgment in this matter against any Defendant that is found liable for [the decedent's] alleged injuries. The Court will not apportion the liability of each Defendant. If a Defendant believes that it has paid more than its equitable share of damages it can seek contribution from a joint tortfeasor in ancillary litigation.

*Id.* However, the court noted that one of the reasons the Supreme Court favored the proportionate fault rule over the *pro tanto* rule was due to the Court's view that contribution "burdens the courts with additional litigation." *Id.* (quoting *AmClyde*, 511 U.S. at 212). "Nonetheless, in maritime asbestos cases, any extra burden on the courts caused by a joint tortfeasor seeking contribution in ancillary litigation is outweighed by a court's interest in conducting a trial in the underlying asbestos litigation that is both manageable and efficient." *Id.*

Further, the court went on to state that admiralty law has traditionally been judge-made, "[s]o in fashioning this rule for maritime asbestos cases, this Court is 'in familiar waters.'" *Id.* at 396 (quoting *AmClyde*, 511 U.S. at 207). Therefore, the district court allowed setoff against any judgment in the case, including any payments that the plaintiffs received for asbestos-type injuries to the decedent, settlements, and payments from bankruptcy trusts. *Id.* Despite this finding, the district court denied the defendants' motion to compel requiring the plaintiffs to answer an interrogatory concerning settlement agreements entered into with other

---

[2] This was a consolidated action. The first action asserted claims against thirty-two (32) Shipowner Defendants under the Jones Act and under general maritime law. The second action asserted negligence and product liability claims against twenty-six (26) Manufacturer Defendants.

10

entities for the decedent's asbestos injuries and to produce "proof of claims" detailing compensation from bankruptcy trusts. *Id*. "If a jury finds that any Defendant is liable for [the decedent's] asbestos injuries and the jury enters a judgment, the Court will require Plaintiffs to produce to Defendants all information relating to compensation Plaintiffs have received for [the decedent's] injuries."

Here, before the Court, is a maritime asbestos case, comparable to the case before the court in *Lewin*. Plaintiffs first filed suit against thirty-three (33) defendants alleging product liability and negligence claims. (Rec. Doc. 3-2). These defendants consist of product manufacturers, insurance companies, premises defendants, and distributor defendants. (*Id.*). Plaintiffs next filed a suit against Continental, and three other alleged insurers, alleging Jones Act and general maritime claims as the insurer of the decedent's ship owner/ employer defendant. (Case No. 21-369, Rec. Doc. 1-1). This second suit was subsequently consolidated with the first. (Rec. Doc. 139). At this point in the litigation, there have been twelve (12) defendants terminated either through settlement or dismissal – nine (9) from the first suit and three (3) from the second – leaving twenty-four (24) defendants remaining in the first case and Continental in the second case. Continental now asks the Court to follow in the *Lewin* court's footsteps and deem this maritime asbestos case "non-ordinary" and allow an exception to the Supreme Court's guidance in *AmClyde* such that Continental can receive *pro tanto* credit for any settling companies and individuals.

A review of the case law shows that courts typically find that a case is "non-ordinary" when the defendants will not be subject to a trial because they have all settled or failed to appear, *see, e.g., Cooper* 2009 WL 1789405, at *7, or the defendants defaulted, *see, e.g., Lukaszuk*, 2007 WL 4699018, at *8. Thus, the use of the *pro tanto* credit approach is most often used when the case will not proceed trial, and the trier of fact will not have the opportunity to apportion fault amongst the defendants. The FELA and Jones Act cases that deviate are the exception in reliance upon a misunderstanding of *Ayers* and *AmClyde*. Moreover, although the court in *Lewin* claimed that it was not following *Ayers*, and that its approach was consistent with *AmClyde's* focus on reasonableness and judicial efficiency, this Court does not find that argument convincing. The *Lewin* court reasoned that the *pro tanto* approach was more reasonable and would lead to greater judicial efficiency considering the number of parties involved. *Lewin*, 224 F.R.D. at 395 ("attempting to determine liability and the proportionate fault of these Defendants would 'present intractable problems of trial management.'"). However, this Court routinely addresses complex cases, including asbestos cases, that involve multiple defendants, crossclaims, and third-party claims. The Court does not find that maritime asbestos litigation is "non-ordinary" such that it should deviate from the Supreme Court's well-articulated rule in *Reliable Transfer* and *AmClyde*. Moreover, the Court, above, detailed why following *Schadel* and its FELA and Jones Act progeny is not appropriate. Therefore, the Court finds that the *pro tanto* credit approach urged by Continental is misplaced

because the liability of non-settling defendants in an admiralty case should be calculated with reference to a jury's allocation of proportionate responsibility.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Defendant, Continental Insurance Company, as successor-in-interest to The Marine Office of America Corporation's, *Motion for Summary Judgment Seeking Pro Tanto Credit for Settlements* **(Rec. Doc. 216)** is **DENIED.**

New Orleans, Louisiana, this 1st day of September, 2022.

_____
CARL J. BARBIER
UNITED STATES DISTRICT JUDGE