UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| EVELYN CONERLY HUTCHINS, ET AL. | CIVIL ACTION |
| VERSUS | NO: 19-11326<br>c/w 21-369 |
| ANCO INSULATIONS, INC., ET AL. | SECTION: "J"(5) |

### ORDER & REASONS

Before the Court are several motions for summary judgment **(Rec. Docs. 346, 348, 374, 380 and 381)** filed by various Defendants, Third-Party Defendants, and Cross-Claim Defendants. These motions are either opposed by Plaintiffs, Evelyn Conerly Hutchins, Derek Hutchins, and Dolan Hutchins; Third-Party Plaintiff, Continental Insurance Company; or Cross-Claimant, Huntington Ingalls, Inc. ("Avondale") or are opposed by some combination of the three. Movants also filed reply memoranda to two of these motions. The Court considers each of the motions and legal memoranda in turn, as well as the record and applicable law.

### FACTS AND PROCEDURAL BACKGROUND

Plaintiffs allege that the decedent, Raymond Hutchins, Jr. ("Mr. Hutchins"), was exposed to asbestos while aboard vessels owned and operated by his employer, Lykes Bros. Steamship Company. ("Lykes Bros.") Mr. Hutchins allegedly worked aboard multiple Lykes Bros. vessels which were built by Avondale Shipyard pursuant to contracts with the United States Maritime Administration (MARAD). Originally, Plaintiffs filed suit in state court against more than 30 defendants, including

1

Huntington Ingalls, Avondale's successor. In response, on June 21, 2019, Huntington Ingalls removed the case to federal court, asserting federal officer jurisdiction. Subsequently, on February 24, 2020, Plaintiffs filed a separate suit in state court against Continental, Lykes Bros.' alleged insurer. Continental removed the case to this Court on February 19, 2021, also asserting federal officer jurisdiction, and this new case was subsequently consolidated with the original case. Huntington Ingalls has filed cross-claims against many of the Defendants in this matter, and Continental Insurance has filed third-party claims against many of those same Defendants and against Huntington Ingalls. Several Defendants have now moved for summary judgment against Plaintiffs, Huntington-Ingalls, Continental, or some combination of the three.

## **LEGAL STANDARD**

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing FED. R. CIV. P. 56); *see Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). When assessing whether a dispute as to any material fact exists, a court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence." *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.,* 530 F.3d 395, 398 (5th Cir. 2008). All reasonable inferences are drawn in favor of the nonmoving party, but a party cannot defeat summary judgment with conclusory allegations or

unsubstantiated assertions. *Little*, 37 F.3d at 1075. A court ultimately must be satisfied that "a reasonable jury could not return a verdict for the nonmoving party." *Delta*, 530 F.3d at 399.

If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must come forward with evidence which would 'entitle it to a directed verdict if the evidence went uncontroverted at trial.'" *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1264-65 (5th Cir. 1991). The nonmoving party can then defeat the motion by either countering with sufficient evidence of its own, or "showing that the moving party's evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party." *Id.* at 1265.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim. *See Celotex*, 477 U.S. at 325. The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists. *See id.* at 324. The nonmovant may not rest upon the pleadings but must identify specific facts that establish a genuine issue for trial. *See id.* at 325; *Little*, 37 F.3d at 1075.

Under Louisiana law, in an asbestos exposure case, the claimant must show that (1) "he had significant exposure to the product complained of," and that (2) the exposure to the product "was a substantial factor in bringing about his injury." *Rando*

3

*v. Anco Insulations, Inc.*, 16 So. 3d 1065, 1091 (La. 2009) (quoting *Asbestos v. Bordelon, Inc.*, 726 So. 2d 926, 948 (La. App. 4 Cir. 1998)). The plaintiff bears the burden of proof on both elements. *Vodanovich v. A.P. Green Indus., Inc.*, 869 So. 2d 930, 932 (La. App. 4 Cir. 2004). When there are multiple causes of injury, "a defendant's conduct is a cause in fact if it is a substantial factor generating plaintiff's harm." *Adams v. Owens-Corning Fiberglas Corp.*, 923 So. 2d 118, 122 (La. App. 1 Cir. 2005) (citing Vodanovich, 969 So. 2d at 932).

"Because there is a medically demonstrated causal relationship between asbestos exposure and mesothelioma, every non-trivial exposure to asbestos contributes to and constitutes a cause of mesothelioma." *Labarre v. Bienville Auto Parts, Inc.*, No. 21-89, 2022 WL 293250, at *3 (E.D. La. Feb. 1, 2022) (citing *McAskill v. Am. Marine Holding Co.*, 9 So. 3d 264, 268 (La. App. 4 Cir. 2009)). Thus, as the Fifth Circuit has explained, "[e]ven if the plaintiff was only exposed to asbestos for a 'short period for an employer[,] and he had longer exposure working for others, it cannot be said the relatively short asbestos exposure was not a substantial factor in causing his mesothelioma.'" *Williams v. Boeing Co.*, 23 F.4th 507, 512 (5th Cir. 2022) (quoting *Rando*, 16 So. 3d at 1091). To defeat a motion for summary judgment in an asbestos case, the non-movant "need only show that a reasonable jury could conclude that it is more likely than not that [plaintiff] inhaled defendant's asbestos fibers, even if there were only 'slight exposures.'" *Id.* (citing *Held v. Avondale Indus., Inc.*, 672 So. 2d 1106, 1109 (La. App. 4 Cir. 1996)). The same causation standard (the substantial factor test) is used in cases involving product liability defendants and premises owner

4

defendants. *Thomas v. A.P. Green Indus., Inc.*, 05-1064, pp. 22-23 (La. App. 4 Cir. 5/31/06), 933 So.2d 843, 860 (citing *Zimko v. American Cyanamid*, 2003-0658, p. 26 (La. App. 4 Cir. 6/8/05), 905 So.2d 465, 485, *writ denied*, 2005-2102 (La. 3/17/06), 925 So.2d 538).

## DISCUSSION

### 1. *Motion for Summary Judgment filed by Huntington Ingalls Incorporated as successor to Ingalls Shipyard* (Rec. Doc. 346)

Defendant Huntington Ingalls Incorporated as successor to Ingalls Shipyard ("Ingalls"), has moved for summary judgment, seeking dismissal of Plaintiffs' claims against it. (Rec. Doc. 346). Plaintiff named Huntington Ingalls Incorporated as a defendant for both the liability of Ingalls Shipyard and Avondale Shipyard. The instant motion only addresses Ingalls Shipyard's liability. (Rec. Doc. 346-1, at 1). Plaintiffs allege that Mr. Hutchins was exposed to asbestos aboard the *Mormacvega* (later known as *Allison Lykes*) and *President Madison* (later known as *Howell Lykes*), which were both constructed at Ingalls Shipyard. *Id.* at 2.

Ingalls argues that there is no evidence that Mr. Hutchins was exposed to any asbestos originating from Ingalls or from any vessels constructed or repaired at Ingalls Shipyard, so the Plaintiffs will be unable to prove that such exposure was significant and a substantial contributing factor to Mr. Hutchins' development of mesothelioma. *Id.* at 8-10. Specifically, Ingalls contends that Plaintiffs are unable to offer any testimony from Mr. Hutchins, his co-workers, or any other witnesses

5

regarding Mr. Hutchins' exposure to asbestos while aboard the Lykes vessels. *Id.* at 8-9

Plaintiffs opposed the motion, pointing to their medical expert's testimony that Mr. Hutchins was, in his opinion, exposed to asbestos while serving on board the *Elizabeth Lykes* vessel, which was a significant contributing factor in causing Mr. Hutchins' mesothelioma. (Rec. Doc. 441, at 4). Continental Insurance also opposed the motion, pointing to testimony from John Fitzpatrick, a co-worker of Mr. Hutchins and a chief engineer, who testified that typical maintenance jobs could include repairing piping and working on boilers. (Rec. Doc. 454, at 3). Continental also points to Plaintiffs' marine chemist and industrial hygiene expert's opinion that Mr. Hutchins was exposed to asbestos from various products and materials on each of the vessels he served aboard, but not any particular vessel. *Id.* Continental argues that (1) Mr. Hutchins service aboard Ingalls's vessels for 3 and a half years exposed him to asbestos insulation and other asbestos products and (2) the expert opinion that such exposure significantly increased Mr. Hutchins's risk of mesothelioma creates a genuine issue of material fact on causation. *Id.* at 6.

In reply, Ingalls notes that Plaintiffs provided medical expert testimony about Mr. Hutchins's exposure on the *Elizabeth Lykes*, which was constructed at a different shipyard, but Plaintiffs do not provide any specific testimony or evidence about exposure occurring on the *Mormacvega/Allison Lykes* or the *President Madison/Howell Lykes*, the vessels manufactured at Ingalls Shipyard. (Rec. Doc. 509, at 2). Ingalls also notes that Continental's reliance on John Fitzpatrick's testimony is

irrelevant to Mr. Hutchins work on the *Mormacvega/Allison Lykes* or the *President Madison/Howell Lykes* because Fitzpatrick only served on the *Elizabeth Lykes* and only provided general responsibilities of an engineer, rather than testimony regarding Mr. Hutchins's work on the *Mormacvega/Allison Lykes* or the *President Madison/Howell Lykes*.

Ingalls also argues that the expert testimony that Mr. Hutchins was exposed on the *Mormacvega/Allison Lykes* or the *President Madison/Howell Lykes* is insufficient, because this type of evidence was also found to be insufficient to defeat summary judgment in *Palermo v. Port of New Orleans*, 933 So. 2d 168 (La. App. 4 Cir. 2006). In *Palermo*, the court noted that the question of whether ship repair companies' activities resulted in substantial exposure to the plaintiff could be answered "by reviewing the factual evidence alone, without considering the expert testimony presented by plaintiffs in their attempt to show such exposure was substantial." *Id.* at 185 (internal quotations omitted). Finding that the plaintiff provided "no specific evidence of any single incident where [asbestos insulation] work was performed" in close proximity to the plaintiff, the court held that the plaintiff's evidence failed to show that he experienced any specific instances of exposure to asbestos resulting from the ship repair defendants' work. *Id.* at 186.

In this case, Plaintiffs have similarly failed to provide evidence of any specific instances of asbestos exposure resulting from Mr. Hutchins's work on vessels constructed by Ingalls. First, neither Plaintiffs nor Continental provided any testimony from co-workers who worked with Mr. Hutchins on the Ingalls'

7

*Mormacvega/Allison Lykes* or the *President Madison/Howell Lykes* vessels that could create an issue of fact regarding Plaintiff's exposure to Ingalls' asbestos. Plaintiffs point to an expert opinion that Mr. Hutchins was exposed to asbestos while aboard various steamships he worked on while in the merchant marine. However, this nonspecific, sweeping statement regarding various steamships is insufficient to defeat summary judgment as to his exposure on Ingalls's specific vessels at issue here. Second, Plaintiffs and Continental do not point to any testimony or evidence that any such alleged exposures were significant.

Finally, the expert opinions that Plaintiffs and Continental point to in their oppositions to the motion for summary judgment provide only evidence that this alleged exposure was a substantial factor in bringing about Mr. Hutchins's mesothelioma, rather than evidence of exposure itself. Specifically, Plaintiffs provide the deposition testimony of medical expert Dr. Kradin, which states,

> Q: Okay, And would it be your opinion that for each of those steam vessels that Mr. Hutchins worked for under circumstances similar to those described for the Elizabeth Lyles, that he experienced exposures on board those vessels that significantly contributed to the causation of mesothelioma?
> A: More likely than not. Yes.

(Kradin Deposition, Rec. Doc. 441-5, at 11). Continental provides the expert report of marine chemist and industrial hygiene expert Troy Corbin, which states,

> Mr. Raymond P. Hutchins Jr.'s roughly 39 years as a Merchant Mariner exposed him to asbestos from various products, equipment, and common materials aboard ships. These exposures were enough to increase his risk of developing lung cancer or mesothelioma.

(Corbin Report, Rec. Doc. 454-6, at 14). Though both experts opined that, in general, Mr. Hutchins's work on steamships exposed him to asbestos enough to be a

8

substantial factor in bringing about his mesothelioma, neither expert established significant exposure aboard the *Mormacvega/Allison Lykes* or the *President Madison/Howell Lykes*. For these reasons, the Court finds that, even drawing reasonable inferences in favor of the nonmoving parties, Plaintiffs and Continental have failed to create an issue of fact on the threshold issue of exposure, and summary judgment in favor of Ingalls is appropriate and should be **GRANTED**.

    2. *Motion for Summary Judgment on Behalf of Redco Corporation* **(Rec. Doc. 348)**

Defendant Redco Corporation, formerly known as Crane Co., has moved for summary judgment against Plaintiffs, Evelyn Conerly Hutchins, Derek Hutchins, and Dolan Hutchins; Cross-Claimant, Huntington Ingalls Incorporated; and Third-Party Plaintiff, Continental Insurance Company. Redco argues that Plaintiffs cannot establish that Mr. Hutchins, the decedent, ever worked with or around any asbestos-containing Redco products or equipment. (Rec. Doc. 348, at 1). Redco points to the testimony of John W. Fitzpatrick, a former coworker of Mr. Hutchins, who testified that he could not recall working with Crane [Co.] valves aboard the *Elizabeth Lykes* where he served with Mr. Hutchins. (Fitzpatrick Deposition, Rec. Doc. 348-2, at 3). Redco also points to the testimony of Ronald Buck Spencer, another former co-worker, who did not identify Redco or Crane Co. as one of the manufacturers of products aboard the *Elizabeth Lykes*. (Rec. Doc. 348, at 6). Therefore, Redco argues that Plaintiffs are unable to prove that Mr. Hutchins was exposed to asbestos by Redco.

Only Avondale has opposed this motion. (Rec. Doc. 457). Avondale argues that there are genuine issues of material fact as to whether Mr. Hutchins was exposed to asbestos by Redco. (Rec. Doc. 457, at 1). Avondale points to the testimony of Ronald Buck Spencer but argues that his testimony is evidence of Mr. Hutchins exposure to Redco asbestos. (Rec. Doc. 457, at 2). Mr. Spencer testified that Mr. Hutchins worked as a chief engineer aboard the *Elizabeth Lykes* and that together, they worked on valves which often required removing old flange gasket material, fabricating gaskets and changed out packing materials for valves. (Spencer Deposition, Rec. Doc. 457-3, at 13, 17). Avondale also points to the construction specifications for Lykes Bros. vessels constructed at Avondale, including the *Elizabeth Lykes*, which required that "the design of all valves shall be in accordance with American Standards Association standards for face to face and flange dimensions, and shall be Crane Company, or equal." (Rec. Doc. 457-8, at 4). Avondale also refers to the testimony of Anthony Pantaleoni, Crane Co.'s corporate representative who stated that Crane Co. supplied valves with gaskets made of asbestos fibers to Avondale. (Pantaleoni Deposition, Rec. Doc. 457-12, at 4). Harry Marsh also testified that he used Crane Co. packing materials while working on Lykes vessels. (Marsh Deposition, Rec. Doc. 457-13, at 7). Mr. Marsh worked aboard several of the same Lykes vessels on which Mr. Hutchins served including the Dolly Turman and Genevieve Lykes, although the two did not work on these vessels at the same time. (*Id.* at 13-16). Finally, Avondale points to the testimony of Dr. Richard Kradin, who testified that Mr. Hutchins would have been exposed to

asbestos from packing materials used for pumps and valves which would have been a significant factor in causing Mr. Hutchins' mesothelioma. (Rec. Doc. 457, at 3). Although Avondale has produced testimony that Mr. Hutchins worked with valves and packing material and has shown that Avondale sought out and used Crane Co. products aboard Lykes vessels, no one who directly worked with Mr. Hutchins was able to testify that they witnessed him interacting with Crane Co. Materials. Furthermore, although Avondale's specifications required "Crane Co. or equal," this is not proof that Crane Co. materials were actually used, and if so, on what ships at what time. Therefore, even drawing all inferences in favor of the Plaintiffs, the Court finds that summary judgment should be **GRANTED** as to Redco.

### 3. Motion for Summary Judgment filed by Sank, Inc. (Rec. Doc. 374)

Defendant, Sank, Inc., formerly known as Buck Kreihs Co., Inc., has moved for summary judgment against Third-Party Claimant, Continental Insurance Co. and Cross-Claimant, Avondale. Plaintiffs have already dismissed their claims against Sank, Inc. Sank argues that there is no evidence that Mr. Hutchins was exposed to asbestos by Sank or Buck Kreihs. (Rec. Doc. 374, at 3).

Both Avondale and Continental oppose this motion. (Rec. Docs. 414, 453). Avondale argues that there are genuine issues of material fact as to whether Mr. Hutchins was exposed to asbestos by Buck Kreihs' dockside repair work. (Rec. Doc. 414, at 1). Avondale turns, again, to the testimony of Ronald Buck Spencer. Mr. Spencer testified that Buck Kreihs performed repairs aboard the *Elizabeth Lykes*, a vessel aboard which he and Mr. Hutchins both served. (Spencer Deposition, Rec.

11

Doc. 414-3, at 14, 15). In another portion of his deposition cited by Continental, Mr. Spencer testified that Buck Kreihs was aboard the *Elizabeth Lykes* "all the time." (Rec. Doc. 453-3, at 210). Avondale also argues that it is undisputed that Buck Kreihs worked with asbestos-containing materials on Lykes vessels during the relevant time period. (Rec. Doc. 414, at 3). In support of this assertion, Avondale cites the testimony of two former Buck Kreihs employees, Michael Tonguis, corporate representative, and Jose Trigueros, a union boilermaker during the 1970s. Both of these individuals testified that Buck Kreihs worked with asbestos containing material. (*See* Rec. Docs. 414-5, 414-6). Avondale also points to the testimony of Warren Ayo who worked as an electrician for Gulf Best Electric aboard multiple ships including at Buck Kreihs' facilities. (Rec. Doc. 414, at 4). Mr. Ayo testified that he worked aboard Lykes vessels at Buck Kreihs and recalled that in the course of his work he was exposed to asbestos through the insulation and pipe work being done around him. (Ayo Deposition, Rec. Doc. 414-8, at 6-9).

In its opposition, Continental refers to the testimony of John W. Fitzpatrick, Mr. Hutchins' former co-worker, who testified that Mr. Hutchins worked either as the first engineer or chief engineer while he and Mr. Fitzpatrick worked together. (Rec. Doc. 453, at 2). Mr. Fitzpatrick testified that as first engineer, Mr. Hutchins' duty would have been all engine room maintenance, and as chief engineer, his duty would have been to delegate the maintenance duties to be performed. Continental also points to the testimony of Ronald Spencer, who testified that Buck Kreihs

worked in the engine room aboard the *Elizabeth Lykes* while Mr. Hutchins was working as either first or chief engineer.

Although Avondale and Continental have established that Buck Kreihs worked with Avondale, the Court notes that neither party has pointed to any direct evidence that Mr. Hutchins actually worked with or around Buck Kreihs employees. Based on the testimony of Mr. Spencer and Mr. Fitzpatrick, it is possible to assume that Mr. Hutchins *could* have been around Buck Kreihs workers while they dealt with asbestos containing materials. However, this assumption cannot be sufficient to carry the burden of proof at trial. Therefore the Court finds that summary judgment should be **GRANTED** as to Sank, Inc.

4. **Motion for Summary Judgment filed by John Crane Inc. (Rec. Doc. 380)**

Cross-Defendant and Third-Party Defendant, John Crane Inc. ("JCI") has moved for summary judgment against Avondale and Continental Insurance Co. (Rec. Doc. 380). Plaintiffs have already dismissed their claims against JCI. (Rec. Doc. 114). JCI is a manufacturer of different types of packing and gaskets which were primarily used in pumps and valves. (Rec. Doc. 380, at 2, 3). JCI claims that approximately 1/2 of their products contained asbestos and that JCI ceased producing asbestos-containing packing and gaskets in 1985. *Id*. JCI argues that there is no evidence that Mr. Hutchins was exposed to asbestos by JCI, and that "simply establishing the presence of JCI's gaskets and/or packing on a vessel Mr.

Hutchins served on . . . is insufficient in adequately defeating JCI's motion for summary judgment." *Id.* at 7.

Both Continental and Avondale have opposed this motion. (Rec. Docs. 419, 449). Avondale argues that there are genuine issues of material fact as to whether Mr. Hutchins was exposed to asbestos aboard the *Elizabeth Lykes*. (Rec. Doc. 419, at 1). Avondale points to a 1966 Avondale Shipyards shipping ticket which indicates that JCI products were specifically ordered by Avondale for use aboard the *Elizabeth Lykes*. However, as JCI points out in reply, there is nothing in the shipping ticket which indicates that these products contained asbestos. (Rec. Doc. 490, at 2). Avondale then turns to the testimony of Ronald Spencer who worked alongside Mr. Hutchins in the engine room of the *Elizabeth Lykes*. Mr. Spencer specifically testified that he used JCI products while working alongside Mr. Hutchins. (Rec. Doc. 419-5, at 14). Continental expands on Mr. Spencer's testimony in their opposition, pointing out that when asked whether there were non-asbestos sheet gasket materials used on the *Elizabeth Lykes*, he answered "No." (Rec. Doc. 449, at 3). Continental also relies on the testimony of William Kammerzell who worked aboard the *Allison Lykes* at the same time as Mr. Hutchins. Mr. Kammerzell testified that most of the valve packing used aboard the *Allison Lykes* was made by JCI and came in boxes which indicated that the product contained asbestos. (Kammerzell Deposition, Rec. Doc. 44903, at 7).

In reply, JCI argues that the Court should disregard the testimony of Mr. Spencer and Mr. Kammerzell. (Rec. Doc. 491, at 2, 3). As to Mr. Spencer, JCI argues

14

that he admitted that he had no personal knowledge as to whether the JCI materials used aboard the *Elizabeth Lykes* contained asbestos. As to Mr. Kammerzell, JCI argues that Mr. Kammerzell never testified to working directly with Mr. Hutchins aboard the *Allison Lykes* despite the fact that they worked aboard that vessel at overlapping periods of time. The Court is not persuaded by JCI's arguments. Although Mr. Spencer did say he had no personal knowledge that the materials contained asbestos, he also said that there were no non-asbestos sheet gasket materials used on the *Elizabeth Lykes*. Of course Mr. Spencer could not testify from personal knowledge as to the chemical composition of the products he and Mr. Hutchins used. His recollections that all of the materials used contained asbestos are enough to defeat summary judgment. Therefore, this motion is **DENIED**.

5. **Motion for Summary Judgment filed by Bayer CropScience, Inc. (Rec. Doc. 381)**

Bayer CropScience, Inc., as Successor to Rhone-Poulenc AG Company, f/k/a Amchem Products, In., f/k/a Benjamin Foster Company ("Bayer") has filed for summary judgment against Avondale and Continental. Plaintiffs have already voluntarily dismissed their claims against Bayer. Bayer argues that there is no competent evidence to establish a basis for liability. (Rec. Doc. 381, at 2). First, Bayer argues that their products contained chrysotile asbestos and that these fibers were encapsulated by binder material compounds which would prevent them becoming airborne. (Rec. Doc. 381, at 2, 3). Second, Bayer argues that no witness

with personal knowledge of Mr. Hutchins' work as a merchant seaman identified a Bayer/Benjamin Foster product or testified that Mr. Hutchins worked with an adhesives. Finally, Bayer argues that Avondale's long-time industrial hygienist, Danny Joyce, testified that Bayer's Fibrous Adhesive 81-27 ("81-27") did not meet the construction specifications for Lykes vessels and therefore would not have been used on any of the vessels Mr. Hutchins served aboard. *Id.* at 3.

Avondale has filed an opposition to this motion. (Rec. Doc. 415). Avondale argues that there is evidence that Mr. Hutchins was exposed to 81-27 which was made Benjamin Foster, a division of Amchem which was Bayer's predecessor. (Rec. Doc. 415). 81-27 was used to adhere insulation and asbestos filled lagging to non-porous surfaces. *Id.* at 4. As to Bayer's arguments concerning encapsulated asbestos, Avondale argues that Amchem admitted that 81-27 becomes hard and brittle when dry and can turn to dust when crushed or sawed. (Rec. Doc. 415, at 4). Avondale also points to the testimony of Dwight Granier who worked as an Avondale insulator from 1965 to 1975. Mr. Granier testified that worked aboard Lykes ships doing both initial construction and repair and testified that he personally used 81-27 to apply asbestos cloth. (Granier Deposition, Rec. Doc. 415-9, at 2-5). Avondale also points to the testimony of Raymond Berthelot and Michael Comardelle, both of whom worked aboard Lykes ships. (Rec. Doc. 415, at 6, 7). Mr. Berthelot and Mr. Comardelle both described how the adhesive they used would drip to the floor, harden, and then create dust when it would be scraped up and swept away. (*See* Berthelot Deposition, Rec. Doc. 415-10, at 16). (*See also* Comardelle Deposition, Rec.

16

Doc. 415-11, at 7). Avondale also cites the testimony of Donald Rome and Charles Savoie, both of whom worked aboard Lykes ships and recalled using 81-27 and the fact that it dried into a hardened material which would then need to be scraped off of the deck. (Rec. Doc. 415, at 8, 9). Therefore, Avondale reasons, even if Mr. Hutchins did not directly work with the adhesive, he may have been exposed to the dust it created once it hardened. Avondale also points to the testimony of Dr. Richard Kradin who opined that exposure to 81-27 would have substantially contributed to his mesothelioma. *Id.* at 10).

In reply, Bayer argues that Avondale's claims in its opposition are contradicted by its own representations to this Court. (Rec. Doc. 486, at 3). Bayer points to the testimony of Danny Joyce, Avondale's industrial hygienist, who testified that 81-27 did not meet the military's specifications for an adhesive lagging to adhere cloth to pipe. (Rec. Doc. 381-5, at 24). Bayer also points to Avondale's own Motion for Summary Judgment, in which Avondale stated "the government provided detailed specifications regarding the installation of asbestos on the Lykes vessels—as well as posed warnings for certain components of the vessels, but not asbestos—and it is undisputed that Avondale complied with those directives." (Rec. Doc. 399, at 19). Bayer also points out that none of the testimony cited by Avondale from Mr. Granier, Mr. Berthelot, Mr. Comardelle, Mr. Rome, and Mr. Savoie came from an individually who actually worked with Mr. Hutchins.

Although Avondale has pointed out that 81-27 may have been aboard Lykes ships, Avondale has not been able to establish that Mr. Hutchins was exposed to it.

17

In fact, Avondale does not even establish which Lykes ships Mr. Granier, Mr. Berthelot, Mr. Comardelle, Mr. Rome, or Mr. Savoie worked on and whether Mr. Hutchins served aboard these ships. Therefore, Avondale has not been able to establish a genuine issue of material fact as to whether Mr. Hutchins was exposed to asbestos by Bayer or its predecessor, Amchem. Accordingly, the Court finds that summary judgment should be **GRANTED**.

## CONCLUSION

Accordingly, **IT IS HEREBY ORDERED** that the motions for summary judgment filed by Huntington Ingalls Incorporated, Sank, Inc., Redco, and Bayer CropScience Inc. **(Rec. Docs. 346, 348, 374, and 381)** are **GRANTED.**

**IT IS FURTHER ORDERED** that the *Motion for Summary Judgment* filed by Defendant, John Crane, Inc. **(Rec. Docs. 380)** is **DENIED**.

New Orleans, Louisiana, this 16th day of May, 2023.

_____
CARL J. BARBIER
UNITED STATES DISTRICT JUDGE